UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SCOTT ALAN FRARY,

       Plaintiff,

v.                                  Case No. 1:18-cv-1106
                                      Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant,

_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied his claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff alleged a disability onset date of December 21, 2012, which he later amended to August 30, 2015. PageID.46. Plaintiff identified his disabling conditions as: bipolar; schizophrenia; anxiety; depression; high blood pressure; stroke; degenerative disc disease; blurry vision; balance problems; difficulty with social functioning; sleep problems; emotional withdrawal and isolation; difficulty grasping objects/manipulation; memory loss; neuropathy; "requires cane for longer walks"; and occasional headaches. PageID.243. Prior to applying for DIB and SSI, plaintiff completed the 10th grade, earned a GED and had worked as a construction laborer, electrician helper, and painter. PageID.53. An Administrative law judge (ALJ) reviewed plaintiff's application *de novo* and entered a written decision denying benefits on January 10, 2018.

1

PageID.46-55. This decision, which was later approved by the Appeals Council, has become the

final decision of the Commissioner and is now before the Court for review.

## I.    LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on

determining whether the Commissioner's findings are supported by substantial evidence. 42

U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is

more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health

& Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the

evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human

Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court

does not review the evidence de novo, make credibility determinations or weigh the evidence.

*Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact

that the record also contains evidence which would have supported a different conclusion does not

undermine the Commissioner's decision so long as there is substantial support for that decision in

the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).

Even if the reviewing court would resolve the dispute differently, the Commissioner's decision

must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to

benefits. A disability is established by showing that the claimant cannot engage in substantial

gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months.  *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905

F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed

a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations

caused by her impairments and the fact that she is precluded from performing her past relevant

work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir.

2003).  However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a

significant number of jobs in the economy that accommodate the claimant's residual functional

capacity (determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant

is or is not disabled at any point in the evaluation process, further review is not necessary.  *Mullis*

*v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied

in social security disability cases."  *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d

716, 719 (W.D. Mich. 2007).  "The proper inquiry in an application for SSI benefits is whether the

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.    ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 30, 2015, and that he met the insured status of the Social Security Act through June 30, 2016. PageID.48. At the second step the ALJ found that plaintiff had severe impairments of cerebrovascular accident (CVA) effects, hypertension (HTN), anxiety, depression, seasonal affective disorder (SAD), and alcohol abuse. *Id*. At the third step the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id*.

The ALJ found at the fourth step that:

After careful consideration of the entire record, I find the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasionally climb, balance, stoop, kneel, crouch, and crawl; occasional contact with environmental irritants; simple, routine, and repetitive work; no production-rate paced work and few work setting changes; occasional coworkers, public, and supervisors contact.

PageID.50. The ALJ also found that plaintiff was unable to perform any past relevant work. PageID.53.

At the fifth step, the ALJ found that plaintiff could perform a significant number of unskilled jobs at the light exertional level in the national economy. PageID.53-54. Specifically, the ALJ found that plaintiff could perform the requirements of unskilled, light exertional level work in the national economy such as marker (81,000 jobs), checker (11,5000 jobs), and inspector (51,500 jobs). PageID.54. Accordingly, the ALJ determined that plaintiff has not been under a

disability, as defined in the Social Security Act, from August 30, 2015 (the alleged onset date) through January 10, 2018 (the date of the decision). PageID.54-55.

### III. DISCUSSION

Plaintiff set forth four issues on appeal:

**A. Did the ALJ err in failing to find that plaintiff's depression and anxiety meets and/or equals the criteria of Listing 12.04 and/or 12.06?**

A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir.1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. §§ 404.1525(d); 416.925(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Secretary of Health & Human Services*, 816 F.2d 1078, 1083 (6th Cir.1987). *See, e.g., Thacker v. Social Security Administration*, 93 Fed. Appx. 725, 728 (6th Cir 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(d); 416.920(d).

The ALJ addressed the relevant portions of the listings as follows:

The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06. In making this finding, I have considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. A marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited. An extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis.

In understanding, remembering, or applying information, the claimant has a mild limitation. He does self-care, some chores, using a computer, and watching TV (B3E). Therefore, the claimant has just mild limitation in understanding, remembering, or applying information.

In interacting with others, the claimant has a moderate limitation. He reports inability to drive, trouble getting along with others, and lost jobs for mood disorder but went to stores, attended appointments/church, and visited with others (B3E). Therefore, the claimant has no more than moderate limitations in interacting with others.

With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. He alleges concentration, following instructions, and completing tasks problems but has enough attention to use a computer, watch TV, and shop/handle money (B3E). I find the claimant has only moderate limitations in concentration, persistence, or maintaining pace.

As for adapting or managing oneself, the claimant has experienced no limitation. He does selfcare, some chores, shopping, making change, and using a computer (B3E). Therefore, the claimant has no limitation in adapting or managing oneself Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

I have also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The record does not establish that the claimant has only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life. The claimant goes to stores, attends appointments/church, and visits with others, which indicate more than a minimal capacity to adapt to changes or to unusual demands.

I note no State agency psychological consultant concluded a mental listing is medically equaled.

PageID.49.

Plaintiff disputes the ALJ's conclusions, stating that plaintiff's function report (Exhibit B3E) can be interpreted to show that plaintiff leads a very sheltered unproductive disabled life. Plaintiff's Brief (ECF No. 12, PageID.546-547). Plaintiff's disagreement with the ALJ is not enough to overturn the decision. The fact that the record contains evidence which could arguably support a different conclusion does not undermine the ALJ's decision so long as there is substantial support for that decision in the record. *See Willbanks*, 847 F.2d at 303. In addition, plaintiff relies on a post-hearing letter written by Lauren Brown, M.D., to satisfy the criteria of the listing. *See* Plaintiff's Brief at PageID.547. However, as discussed in § III.D., *infra*, this letter is not part of the administrative record.

Based on this record, the Court concludes that the ALJ has set forth a sufficient explanation for his determination that plaintiff failed to meet the criteria of the listings. His determination is supported by substantial evidence. *See Cutlip*, 25 F.3d at 286 ("[s]ubstantial evidence . . . is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Accordingly, plaintiff's claim of error is denied.

**B. Was the ALJ's evaluation of plaintiff's residual functional capacity (RFC) of light work supported by substantial evidence on the whole record?**

As an initial matter, plaintiff's argument does not track with the alleged error. While the statement of error addresses an exertional limitation (light work), plaintiff's argument addresses non-exertional limitations (mental deficiencies), specifically the ALJ's hypothetical question posed to the vocational expert (VE). Plaintiff's Brief at PageID.547-550.

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that

the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990). "T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118 (6th Cir. 1994).

Here, the ALJ relied on a hypothetical question based upon the RFC determination:

> I'd like you to assume an individual the same, [sic] education and work experience as out claimant. My first hypothetical individual can work at the light level. He can only occasionally climb ladders, ramps, stairs, balance, stoop, no couching [sic], crawl [sic]. He can only have occasional contact with environmental irritants. <u>He's limited to simple, routine, repetitive work, no production rate and few if any changes in the work setting and only occasional contact with coworkers, the public and supervisor</u>. . .

PageID.75 (emphasis added). The VE testified that such a hypothetical individual could work as a marker (81,000 jobs), checker (11,500 jobs), and inspector hand packager (51,500 jobs). PageID.76.

The crux of plaintiff's claim is that the non-exertional limitations "did not adequately account for Plaintiff's moderate to extreme difficulties in maintaining concentration, persistence and pace along with the other substantial limitations that had cost him jobs in the past for uncontrolled anger and passion expressed in school and at the work place." Plaintiff's Brief at PageID.548. The Court disagrees. The terms "simple, routine, repetitive work" are in essence shorthand for the types of duties involved in unskilled work, which is defined as follows:

> Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs.

20 C.F.R. §§ 404.1568(a) and 416.968(a). See *Allison v. Apfel*, No. 99-4090, 2000 WL 1276950 at *4 (6th Cir. Aug.30, 2000) ("We believe that the ALJ's qualification that [the claimant] was limited to simple, repetitive, and routine tasks, within the category of light work, simply means that [the claimant] is limited to unskilled light work.") (citing 20 C.F.R. § 404.1568(a)). *See, e.g., Smith v. Halter*, 307 F.3d 377, 378–79 (6th Cir. 2001) (a hypothetical question limiting the claimant to jobs that are "routine and low stress, and do not involve intense interpersonal confrontations, high quotas, unprotected heights, or operation of dangerous machinery" appropriately addressed the limitations of the claimant who "often" suffered problems with concentration, persistence or pace resulting in the failure to complete tasks in a timely manner). Accordingly, plaintiff's claim of error is denied.[1]

### C. Did the ALJ fail to give sufficient weight to the limitations from plaintiff's impairment of obesity?

Plaintiff contends that the ALJ did not adequately consider his obesity. The Court disagrees. Although the agency deleted obesity from the Listing of Impairments, the Commissioner views obesity as a medically determinable impairment that can be considered when evaluating a claimant's disability. While Social Security Ruling (SSR) 02-1p, provides guidance

---

[1] The Court notes that plaintiff's arguments include brief references to opinions expressed by Leonard J. McCulloch, M.A. and Sidney Heisler, M.D. *See* Plaintiff's Brief at PageID.548-549. Plaintiff did not develop these arguments. Nor did he address the ALJ's evaluation of Mr. McCulloch's opinion. *See* PageID.52. Contrary to plaintiff's assertion, Dr. Heisler did not "assess[] plaintiff's RFC with work preclusive limitations." Plaintiff's Brief at PageID.549. Dr. Heisler produced a report regarding plaintiff's visit to Oaklawn Hospital on March 25, 2014 (PageID.358-360), more than one year before plaintiff's alleged onset date (August 30, 2015).

for the ALJ's in evaluating a claimant's obesity, it does not create a separate procedure requiring

the Commissioner to consider obesity in every case.

> Social Security Ruling 02-01p does not mandate a particular mode of analysis. It
> only states that obesity, in combination with other impairments, "may" increase the
> severity of the other limitations. It is a mischaracterization to suggest that Social
> Security Ruling 02-01p offers any particular procedural mode of analysis for obese
> disability claimants.

*Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 411-12 (6th Cir. 2006). "Social Security Ruling 02–

01p does not mandate a particular mode of analysis, but merely directs an ALJ to consider the

claimant's obesity, in combination with other impairments, at all stages of the sequential

evaluation." *Nejat v. Commissioner of Social Security*, 359 Fed. Appx. 574, 577 (6th Cir. 2009).

Here, plaintiff did not identify any particular work restriction associated with his

obesity and the ALJ did not find obesity to be a severe impairment. PageID.48. The question

before the Court is whether the ALJ considered "obesity" in combination with other impairments.

The ALJ stated that he evaluated plaintiff's residual functional capacity (RFC) "based on all the

evidence with consideration of the limitations and restrictions imposed by the combined effects of

all the claimant's medically determinable impairments." PageID.50. The ALJ was aware that

plaintiff had a history of morbid obesity. As part of his rationale for determining plaintiff's RFC,

state agency physician Thomas Chiambretti, D.O. stated that, "[o]besity can cause or contribute to

impairments in the musculoskeletal, endocrine, respiratory, and cardiovascular systems" and that

"[t]he totality of the medical evidence in the file support the claimant's ability to engage in activity

as indicated in the RFC." PageID.112-114.

The ALJ reviewed Dr. Chiambretti's RFC limiting plaintiff to "light work with

occasional postural activities and avoiding even moderate exposure to hazards" and gave it great

weight.  PageID.52.  By utilizing the opinion of a physician who discussed plaintiff's obesity to

develop the RFC,

> the ALJ incorporated the effect that obesity has on the claimant's ability to work
> into the RFC he constructed. *See Bledsoe*, 165 Fed.Appx. at 412 (noting that an
> ALJ does not need to make specific mention of obesity if he credits an expert's
> report that considers obesity); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir.
> 2004) (stating "although the ALJ did not explicitly consider [claimant's] obesity, it
> was factored indirectly into the ALJ's decision as part of the doctors' opinions.").

*Coldiron v. Commissioner of Social Security*, 391 Fed. Appx. 435, 443 (6th Cir. 2010).  The ALJ

adequately accounted for plaintiff's history of obesity.  Accordingly, plaintiff's claim of error is

denied.

> **D.  Should the Appeals Council have placed plaintiff's after
> acquired letter and opinions from his treating psychiatrist into
> evidence and remanded the case for further administrative
> review?**

Plaintiff has raised this issue as one seeking a sentence-six remand for consideration

of evidence which he submitted to the Appeals Council after the ALJ denied benefits.  When a

plaintiff submits evidence that has not been presented to the ALJ, the Court may consider the

evidence only for the limited purpose of deciding whether to issue a sentence-six remand under

42 U.S.C. § 405(g).  *See Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711

(6th Cir. 1988).  Under sentence-six, "[t]he court . . . may at any time order the additional evidence

to be taken before the Commissioner of Social Security, but only upon a showing that there is new

evidence which is material and that there is good cause for the failure to incorporate such evidence

into the record in a prior proceeding . . ."  42 U.S.C. § 405(g).  In a sentence-six remand, the court

does not rule in any way on the correctness of the administrative decision, neither affirming,

modifying, nor reversing the Commissioner's decision.  *Melkonyan v. Sullivan*, 501 U.S. 89, 98

(1991).  "Rather, the court remands because new evidence has come to light that was not available

to the claimant at the time of the administrative proceeding and that evidence might have changed

the outcome of the prior proceeding." *Id.* "The party seeking a remand bears the burden of

showing that these two requirements are met." *Hollon ex rel. Hollon v. Commissioner of Social*

*Security*, 447 F.3d 477, 483 (6th Cir. 2006).

"A claimant shows 'good cause' by demonstrating a reasonable justification for the

failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster v.*

*Halter*, 279 F.3d 348, 357 (6th Cir. 2001). To show good cause a claimant is required to detail the

obstacles that prevented him from entering the evidence in a timely manner. *Bass v. McMahon*,

499 F.3d 506, 513 (6th Cir. 2007). "The mere fact that evidence was not in existence at the time

of the ALJ's decision does not necessarily satisfy the 'good cause' requirement." *Courter v.*

*Commissioner of Social Security*, 479 Fed. Appx. 713, 725 (6th Cir. 2012). In order for a claimant

to satisfy the burden of proof as to materiality, "he must demonstrate that there was a reasonable

probability that the [Commissioner] would have reached a different disposition of the disability

claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711.

Here, the Appeals Council denied plaintiff's request for review. PageID.28-34. In

its decision, the Appeals Council referred to additional evidence submitted by plaintiff:

> You submitted a Statement from Lauren Brown, MD from Community
> Mental Health dated February 23, 2018 (2 pages). The Administrative Law Judge
> decided you case through January 10, 2018. This additional evidence does not
> relate to the period at issue. Therefore, it does not affect the decision about whether
> you were disabled beginning on or before January 10, 2018.

PageID.29.[2]

---

[2] The Court notes that the doctor's one-page "to whom it may concern" letter is dated February 15, 2018, not February 23, 2018. It was submitted to the Appeals Council by plaintiff's attorney with a transmittal letter dated February 23, 2018. *See* PageID.36-37.

Plaintiff contends that the letter is new and material because it was not provided by the treating psychiatrist until after the decision had been made and "[i]t relates to at least from 2/2017 to 2/15/2018." Plaintiff's Brief (ECF No. 12, PageID.552).

Based on this record, plaintiff is not entitled to a sentence-six remand, which would be for the sole purpose of having the ALJ examine Dr. Brown's letter. First, plaintiff has not presented good cause for the late production of this evidence. Contrary to plaintiff's contention (PageID.552), he cannot demonstrate good cause simply because Dr. Brown's letter was not provided by the doctor until after the ALJ's decision. *See Courter*, 479 Fed. Appx. at 725. Plaintiff has presented no evidence of obstacles that prevented him from obtaining an opinion from Dr. Brown prior to the issuance of the ALJ's decision. A claimant's failure to obtain otherwise-available medical evidence before the hearing does not constitute the "good cause" under 42 U.S.C. § 405(g). *See Oliver v. Secretary of Health and Human Services*, 804 F.2d 964, 966 (6th Cir.1986) (finding that the claimant did not have good cause for failing to obtain additional medical tests in advance of his administrative hearing before the ALJ). Furthermore, Dr. Brown's letter was generated after the denial of plaintiff's claim. Under such circumstances, good cause does not exist for plaintiff's failure to present this new evidence to the ALJ. *See Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985) (explaining that the good cause requirement would be meaningless if every time a claimant lost before the agency he was free to seek out a new expert witness who might better support his position).

Second, plaintiff has failed to demonstrate materiality. While Dr. Brown's letter states that plaintiff was initially examined by the team at the Eaton County Counseling Center on February 9, 2017, Dr. Brown does not discuss her interaction with him. PageID.37. In addition, the thrust of the doctor's opinion is that "[a]t this time, patient's symptoms are such that I do not

believe that he could hold down employment." *Id*. Dr. Brown's letter did not address plaintiff's condition prior to the ALJ's decision, specifically referencing the date of the letter (*i.e.*, "[a]t this time") as opposed to a date prior to the ALJ's decision. In addition, the substance of the doctor's opinion, *i.e.*, that plaintiff could not hold down employment, is an issue reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(1) and 416.927(d)(1) ( "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled' ). Such statements, by even a treating physician, constitute a legal conclusion that is not binding on the Commissioner. *Crisp v. Secretary of Health and Human Services*, 790 F.2d. 450, 452 (6th Cir. 1986). *See Houston v. Secretary of Health and Human Services*, 736 F.2d 365, 367 (6th Cir. 1984) (the determination of disability is the prerogative of the Commissioner, not the treating physician). Accordingly, plaintiff's request for a sentence six remand is denied.

## IV.    CONCLUSION

Accordingly, the Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g).   A judgment consistent with this opinion will be issued forthwith.

Dated:  March 23, 2020                                            /s/ Ray Kent
                                                                          United States Magistrate Judge